HEATHER E. WILLIAMS, CA Bar No. 122664
Federal Defender
LINDSAY N. BENNETT, GA Bar No. 141641
Assistant Federal Defender
Email: Lindsay_Bennett@fd.org
KELLY L. CULSHAW, CA Bar No. 304778
Assistant Federal Defender
Email: Kelly_Culshaw@fd.org
Office of the Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-6666
Facsimile: (916) 498-6656

Attorneys for Petitioner,
JOSEPH EDWARD DUNCAN, III

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH EDWARD DUNCAN, III, | ) Case No.  2:17-cv-00091-EJL |
| | )             2:07-cr-00023-EJL |
| Petitioner, | ) |
| | ) **PETITIONER'S SUPPLEMENTAL** |
| v. | ) **BRIEF IN SUPPORT OF CLAIM 9** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

Pursuant to this Court's order of January 7, 2019 (Doc. 40), the Petitioner, JOSEPH E. DUNCAN, hereby submits this supplemental brief regarding the impact of the U.S. Supreme Court's decision in *Sessions v. Dimaya*, __U.S. __, 138 S.Ct. 1204 (2018), which held that the definition of a "crime of violence" set forth in 18 U.S.C. § 16 is unconstitutionally vague.  For the reasons set forth below, *Dimaya* requires that the death sentence imposed on Mr. Duncan's conviction of the charges alleged in Count 7 of his Indictment be set aside.

It will be remembered that in Count 7 of the Indictment, Mr. Duncan was charged as follows:

## COUNT SEVEN

**Using a Firearm During and in Relation to a Crime of Violence Resulting in Death**
**18 U.S.C. §§ 924(c)(1)(A)(ii), (c)(1)(B)(i) and (j)(1)**

On or about May 16, 2005 and between July 2, 2005, in the District of Idaho, the defendant, JOSEPH EDWARD DUNCAN, III, did knowingly carry and use a firearm, to wit: a Browning Arms 12-gauge short-barreled shotgun, serial no. 751PR06861, with a barrel length of approximately 12 1/6 inches and an overall length of approximately 24 1/2 inches, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is the crimes alleged in Counts One and Two of this Indictment which are realleged and incorporated by reference herein, in violation of Title 18, United States Code, Section 924(c)(1), and in the course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111, in that the defendant with malice aforethought, did unlawfully kill D.G. by shooting him with the firearm willfully, deliberately, maliciously and with premeditation; all in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii), (c)(1)(B)(i) and (j)(1).

Title 28 U.S.C. § 924(j)(1) provides:

A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—(1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life.

Section 924(c) delineates certain sentencing enhancements for persons convicted of using or carrying a firearm during and in relation to any "crime of violence," which is defined as:

an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

Mr. Duncan received a death sentence under Count 7 of his Indictment on the theory that kidnapping and kidnapping resulting in death, as alleged in Counts 1 and 2 of the Indictment are crimes that "by [their] its nature, involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" within the meaning of § 924(c)(3)(B). As the Government has conceded, neither kidnapping nor kidnapping resulting in death qualifies as a crime of violence under § 924(c)(3)(A), commonly referred to as the "elements clause." *See* Answer at 110 n. 36 ("Duncan is correct that the other definition of "crimes of violence" in § 924(c)(3), the elements clause, does not apply. The two predicate crimes can be accomplished, at least in theory, without the use of force."), *citing Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1127 (9th Cir. 2012).

Citing *Dimaya v. Lynch*, 803 F. 3d 1110 (9th Cir. 2015), Mr. Duncan's section 2255 motion alleged that section 924(c)(3)(B), commonly known as the "elements clause" was constitutionally vague. Therefore, he asserted, the death sentence imposed on Count 7 cannot stand. In response, the Government noted that the U.S. Supreme Court had granted certiorari in *Dimaya*, and it predicted the Ninth Circuit would be reversed. Answer at 111.

On April 17, 2018, the U.S. Supreme Court decided *Dimaya* and affirmed the Ninth Circuit. *Sessions v. Dimaya*, __U.S. __, 138 S.Ct. 1204 (2018). The U.S. Supreme Court held that the residual clause of 18 U.S.C. § 16, which defines "crime of violence" with a provision that is word-for-word identical[1] to section § 924(c), is unconstitutionally vague.

---

[1] Under 18 U.S.C. § 16, a "crime of violence" is
> "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

As quoted previously, 18 U.S.C. § 924(c), a crime of violence is
> "an offense that is a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." As can be seen, the only difference between the provisions is the placement of the dependent clause "that is a felony."

In an opinion by Justice Kagan, the Supreme Court in *Dimaya* drew heavily from its prior decision in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015), holding that the "violent felony" definition in the Armed Career Criminal Act, 18 USC § 924(e) is unconstitutionally vague. Section 924(e) defines "violent felony" as

> "any crime punishable by imprisonment for a term exceeding one year . . . that— "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Like sec 16 and sec 924(c), section 924(e) starts with an elements clause and a residual clause.

In *Johnson*, the Court held that § 924(e)(ii)'s reference to a crime presents a "serious potential risk" of physical injury required an "ordinary case" analysis:

> whether the residual clause covers a crime [] requires a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that abstraction presents a serious potential risk of physical injury. *James, supra*, at 208. The court's task goes beyond deciding whether creation of risk is an element of the crime. That is so because, unlike the part of the definition of a violent felony that asks whether the crime "has as an *element* the use . . . of physical force," the residual clause asks whether the crime "*involves conduct*" that presents too much risk of physical injury.

*Johnson*, 135 S. Ct. at 1215 (emphasis original). In *Dimaya*, the Court noted that the § 924--- residual clause with its reference to a crime that "by its nature, involves a substantial risk that physical force" will be used, similarly requires an "ordinary case" analysis. In both instances, the Court found the ordinary case inquiry to be hopelessly vague. As stated in *Dimaya*

> How does one go about divining the conduct entailed in a crime's ordinary case? Statistical analyses? Surveys? Experts? Google? Gut instinct? *See Johnson*, 576 U. S., at ___ (slip op., at 5); supra, at 7; post, at 16–17 (GORSUCH, J., concurring in part and concurring in judgment). And we can as well reiterate *Johnson's* example: In the ordinary case of attempted burglary, is the would-be culprit spotted and confronted, or scared off by a yell? See post, at 16 (opinion of GORSUCH, J.) (offering other knotty examples). Once again, the questions have no good answers; the "ordinary case" remains, as Johnson described it, an excessively "speculative," essentially inscrutable thing. 576 U. S., at ___ (slip op., at 5); accord post, at 27 (THOMAS, J., dissenting)

*Dimaya*, 138 S. Ct. at 1215 (footnote omitted).

As to both § 924 and § 16, compounding the problem of determining what would be an "ordinary case" was the problem of determining level of risk necessary to make an ordinary case "violent." As stated in *Johnson*:

> "The residual clause … requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime. Because the elements necessary to determine the imaginary ideal are uncertain[,] this abstract inquiry offers significantly less predictability than one that deals with the actual . . . facts."

*Id*. at 2561 (some internal quotation marks, citations, and alterations omitted). In *Dimaya*, the Court repeated this refrain:

> The difficulty comes, in §16's residual clause just as in ACCA's, from applying such a standard to "a judge-imagined abstraction"—i.e., "an idealized ordinary case of the crime." *Id*., at ___, ___ (slip op., at 6, 12). It is then that the standard ceases to work in a way consistent with due process.

*Dimaya*, 138 S. Ct. at 1215-16,

In the instant case, the Government's Answer, in anticipation of its potential loss in *Dimaya*, argued § 924(c)(3), although by its terms is identical to § 16, in context has one critical difference: section 924 looks to the current offense while section 16 looks to a prior offense. *See* Answer at 119-20. The Answer fails to clarify how that distinction would make a difference. However, in the wake of *Dimaya*, the Government has in other cases staked out a more definite position, one which petitioner anticipates the Government will assert here. The current governmental trend is to argue that the "ordinary case" approach for § 924(c) cases should be abandoned in favor of an "underlying conduct" approach. However, the "underlying conduct" approach to residual clause definitions was rejected in both *Johnson* and *Dimaya*. As noted in *Dimaya*:

> such an approach would generate its own constitutional questions. As JUSTICE THOMAS relates, post, at 22, 28, this Court adopted the categorical approach in part to "avoid[ ] the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that

properly belong to juries." *Descamps v. United States*, 570 U. S. 254, 267 (2013).

*Id*. at 1217. The *Dimaya* Court further explained:

> Our decisions have consistently understood language in the residual clauses of both ACCA and §16 to refer to "the statute of conviction, not to the facts of each defendant's conduct." *Taylor v. United States*, 495 U. S. 575, 601 (1990); *see Leocal*, 543 U. S., at 7 (Section 16 "directs our focus to the 'offense' of conviction . . . rather than to the particular facts"). Simple references to a "conviction," "felony," or "offense," we have stated, are "read naturally" to denote the "crime as generally committed." *Nijhawan v. Holder*, 557 U. S. 29, 34 (2009); *see Leocal*, 543 U. S., at 7; *Johnson*, 576 U. S., at ___ (slip op., at 13). And the words "by its nature" in §16(b) make that meaning all the clearer. The statute, recall, directs courts to consider whether an offense, by its nature, poses the requisite risk of force. An offense's "nature" means its "normal and characteristic quality." Webster's Third New International Dictionary 1507 (2002). So §16(b) tells courts to figure out what an offense normally—or, as we have repeatedly said, "ordinarily"— entails, not what happened to occur on one occasion.

*Id*. at 1217-18.

The *Dimaya* Court prefaced that discussion with this trenchant observation:

> For anyone who has read *Johnson*, that argument will ring a bell. The dissent there issued the same invitation, based on much the same reasoning, to jettison the categorical approach in residual-clause cases. 576 U. S., at ___– ___ (slip op., at 9–13) (opinion of ALITO, J.). The Court declined to do so.

*Id*. at 1216.

Admittedly, some circuits have agreed that the underlying facts approach is appropriate for § 924(c) cases at least where, unlike here, the particular facts have been submitted to, and found by, the jury. *See, e.g., United States v. Douglas*, 907 F.3d 1 (1st Cir. Oct. 12, 2018); *United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018). However, under law of the Ninth Circuit that is binding on this Court, the generalized approach to the residual clause is required. *See, e.g., United States v. Piccolo*, 441 F.3d 1084, 1086–87 (9th Cir.2006) ("In the context of crime of violence determinations under section 924(c), our categorical approach applies regardless of whether we review a current or prior crime."); *United States v. Amparo*, 68 F.3d 1222, 1225-26

Petitioner's Supplemental Brief
in Support of Claim 9                                            6

*Joseph Edward Duncan, III v United States of America,*
*Case No. 2-17-cv-00091-EJL*

(9th Cir.1995); *United States v. Mendez*, 992 F.2d 1488, 1490-92 (9th Cir.1993); *United States v. Springfield*, 829 F.2d 860, 862-63 (9th Cir.1987).[2]

For the foregoing reasons, the Court should grant relief on Claim 9 of Mr. Duncan's § 2255 petition and set aside the death judgment imposed on Count 7.

Date:   January 22, 2019

RESPECTFULLY SUBMITTED,

HEATHER E. WILLIAMS
Federal Defender

*/s/ Lindsay N. Bennett*
LINDSAY N. BENNETT
Assistant Federal Defender

*/s/ Kelly L. Culshaw*
KELLY L. CULSHAW
Assistant Federal Defender

Attorneys for Petitioner,
JOSEPH EDWARD DUNCAN, III

---

[2] Should the Government attempt to distinguish Dimaya on some basis other than that presaged on pages 119-20 of its Answer, petitioner would respectfully request an opportunity to respond to such new argument.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of January, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Bart M. Davis
United States Attorney
United States Attorney's Office
Washington Group IV
800 Park Blvd., Suite 600
Boise, Idaho 83712

Katherine L. Horwitz
Assistant United States Attorney
Email: Katherine.horwitz@usdoj.gov
United States Attorney's Office
Washington Group IV
800 Park Blvd., Suite 600
Boise, Idaho 83712

Syrena C. Hargrove
Assistant United States Attorney
Email: Syrena.hargrove@usdoj.gov
United States Attorney's Office
Washington Group IV
800 Park Blvd., Suite 600
Boise, Idaho 83712

Jeffrey B. Kahan
Trial Attorney
Email: Jeffrey.kahan@usdoj.gov
U.S. Department of Justice
Capital Case Section
1331 F Street, NW; 6th FL
Washington, DC 20530

*/s/ Lindsay N. Bennett*
LINDSAY N. BENNETT