BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
SYRENA C. HARGROVE, IDAHO STATE BAR NO. 6413
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413
E-MAIL: syrena.hargrove@usdoj.gov; kate.horwitz@usdoj.gov

JEFFREY B. KAHAN, PENNSYLVANIA BAR NO. 93199
TRIAL ATTORNEY,U.S. DEPARTMENT OF JUSTICE, CAPITAL CASE SECTION
E-MAIL: jeffrey.kahan@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH EDWARD DUNCAN, III, <br><br> Movant, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Case No. 2:17-CV-00091-EJL <br> 2:07-CR-00023-EJL <br><br> **GOVERNMENT'S SUPPLEMENTAL BRIEFING ON CLAIM 9** |

The impact of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) on the present claim is limited given the inherent differences between 18 U.S.C. § 16(b) and 18 U.S.C. § 924(c), as previously discussed. *See* CV Dkt. 34 at 111-12, 119-20. The Supreme Court's splintered ruling in *Dimaya* raises an additional distinction, however: whether the categorical approach applies at all.

*Dimaya* included no Supreme Court majority holding that § 16(b) requires a categorical

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9** - 1

approach, and it leaves open the same question for § 924(c)(3)(B).[1]  Where a Supreme Court

decision undercuts prior Ninth Circuit precedent, this Court may re-examine the issue.  *See*

*Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  In light of *Dimaya*, the

categorical approach should not survive in the context of § 924(c).  In addition, Duncan was

convicted and sentenced under § 924(j) in Count 7, not simply § 924(c).  The factual findings

required for his convictions render vagueness challenges to § 16(b) incomparable.

I.      *Dimaya* **does not require a categorical approach to Section 924(c)(3)(B).**

In *Dimaya*, the Supreme Court determined that "[t]wo features" on which it had

previously relied to invalidate the "residual clause" of the Armed Career Criminal Act of 1984

(ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), were likewise present in § 16(b).  *Dimaya*, 138 S. Ct. at

1213 (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015)).  The Court explained that

§ 16(b), like the ACCA's residual clause, "calls for a court to identify a crime's 'ordinary case'

in order to measure the crime's risk" and creates "uncertainty about the level of risk that makes a

crime 'violent.'"  *Id.* at 1215.  The Court emphasized, however, that the "substantial risk" feature

gives rise to constitutional concerns only when combined with the "categorical approach"

feature.  *Id.* at 1214-15.  The Court disavowed the view that the substantial-risk feature "is alone

problematic," and it "'d[id] not doubt' the constitutionality of applying" a "'substantial risk

[standard] to real-world conduct.'"  *Id.* at 1215 (quoting *Johnson*, 135 S. Ct. at 2561).

The Court also did not hold in *Dimaya* that language like § 16(b)'s invariably mandates a

categorical approach under which a court must disregard real-world conduct in favor of the

"ordinary case."  A plurality of the Court viewed § 16(b)—which is often applied to classify a

---

[1]      After *Dimaya*, the Supreme Court granted certiorari and remanded a Sixth Circuit case for consideration of whether § 924(c)(3)(B) is impermissibly vague in light of *Dimaya*.  *Manners v. United States*, No. 17-8035, 2018 WL 1278398, at *1 (S. Ct. Oct. 1, 2018).

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9 - 2**

prior conviction entered by another court in otherwise unrelated proceedings—as "[b]est read" to require such an approach. 138 S. Ct. at 1217 (opinion of Kagan, J.); *see id.* at 1216-18. The plurality also observed, however, that the Government had not asked the Court to abandon the categorical approach in the § 16(b) context. *Id.* at 1217. Justice Gorsuch, concurring in part and concurring in the judgment, remarked upon the Government's concession in that case and expressed willingness to consider "in another case" whether "precedent and the proper reading of language" like § 16(b)'s in fact requires a categorical approach. *Id.* at 1233 (opinion of Gorsuch, J.). Justice Thomas, joined by Justices Kennedy and Alito, filed a dissenting opinion advocating that the Court "should abandon [the categorical] approach" entirely under § 16(b). *Id.* at 1242 (opinion of Thomas, J.). *Dimaya* thus included no holding by a majority of the Court that § 16(b) requires a categorical approach. Rather, the question remains open to § 16(b). The question is thus open with respect to § 924(c)(3)(B) as well.

**II.     Section 924(c)(3)(B) should be interpreted to require a case-specific approach.**

The Ninth Circuit, like the Government, has previously viewed § 924(c)(3)(B) to require a categorical approach. Originally, the Circuit described § 924(c) as an "enhancement provision," akin to the ACCA. *United States v. Sherbondy*, 865 F.2d 996, 1009-10 & n.18 (9th Cir. 1988). Thereafter, the Ninth Circuit has assumed that the categorical approach applies to § 924(c)(3)(B) because the Supreme Court has applied that approach to other similarly worded statutes, such as the ACCA and § 16(b). *See United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir. 1993). Those decisions did not consider the Supreme Court's reasons for adopting the categorical approach, however. Nor did they consider the fact that § 924(c)(3)(B) has a different statutory and jurisprudential context than the ACCA and § 16(b).

Conviction under § 924(c) requires a jury to find (or the defendant to admit through a

plea) that the defendant "committed all the acts necessary to be subject to punishment for" a qualifying federal crime and that his commission of that crime had a sufficient nexus to his use, carrying, or possession of a firearm. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). The jury's role thus inherently requires consideration of, and determinations about, the unlawful course of conduct charged as a "crime of violence" under § 924(c)(3)(B). Unlike a recidivist sentencing enhancement (like the ACCA) or the classification of a prior offense for purposes of determining an alien's removability (like § 16(b) in *Dimaya*), § 924(c)(3)(B)'s definition of a "crime of violence" is never applied to a prior conviction. Instead, a prosecution under § 924(c) will by necessity involve the factual record about the underlying crime. *United States v. St. Hubert*, 883 F.3d 1319, 1335 (11th Cir. 2018). That feature of § 924(c) cases enables the jury to apply the "crime of violence" definition in § 924(c)(3)(B) in a case-specific manner that considers a defendant's own conduct. Construing the statute to incorporate such an approach makes good sense, *id.*, and comports with text and precedent.

In order for an "offense" to be a crime of violence under § 924(c)(3)(B), it must, "by its nature, involve[]" a substantial risk that physical force "may be used in the course of committing the offense." That language comports with a case-specific approach. As the Supreme Court recognized in *Nijhawan v. Holder*, 557 U.S. 29 (2009), "in ordinary speech words such as 'crime,' 'felony,' 'offense,' and the like sometimes refer to . . . the specific acts in which an offender engaged on a specific occasion." *Id.* at 33-34. The Court in that case accordingly interpreted a provision that used the term "offense" to "call[] for a 'circumstance-specific,' not a 'categorical,' interpretation." *Id.* at 36; *cf. United States v. Hayes*, 555 U.S. 415, 426 (2009) (construing a statutory reference to "an offense committed by a current or former spouse," as contemplating a factual, rather than a categorical, inquiry); *see also Mathis v. United States*, 136

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9 - 4**

S. Ct. 2243, 2252 (2016) (stating that the language at issue in *Hayes* was exactly the type of language that Congress would employ as an instruction "to look into the facts" of a crime). Section 924(c)(3)(B)'s similar reference to "committing the offense" can thus reasonably be understood to refer to the specific criminal conduct at issue in the § 924(c) prosecution.

Section 924(c)(3)(B) also uses the term "involves," a term that Congress repeatedly used in other provisions of the Comprehensive Crime Control Act of 1984 in a manner that requires courts to consider a defendant's underlying conduct (the enactment that contained the original "crime of violence" definition for § 924(c)). *See, e.g.*, Pub. L. No. 98-473, § 4243, 98 Stat. 1837, 2059 (Oct. 12, 1984); *id.* § 502, 98 Stat. 2068; *id.* § 1952B, 98 Stat. 2137. Although the rule is not invariable, it is a "basic canon of statutory construction that identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (citations omitted). Application of that canon makes particular sense in this context, because the Supreme Court has previously relied on the *absence* of the word "involves" as indicating that a categorical approach *is* required. *See Taylor v. United States*, 495 U.S. 575, 600-01 (1990).

A jury can readily determine whether a defendant's underlying "offense by its nature, involves" the use of physical force in the course of its commission without needing to consider what the "ordinary case" of that offense might be. The term "nature" refers to "the basic or inherent features, character, or qualities of something." Oxford Dictionary of English 1183 (3d ed. 2010). That "something" can be the defendant's own crime, rather than a stylized "ordinary case." Congress has, for example, instructed sentencing courts to consider "the nature and circumstances of the offense"—naturally understood as the defendant's own conduct—in determining the appropriate sentence in a federal criminal case. 18 U.S.C. § 3553(a)(1); *see also Dimaya*, 138 S. Ct. at 1254 n.7 (Thomas, J., dissenting) (citing other examples).

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9 - 5**

The position and function of § 924(c)(3)(B) suggest an inquiry that goes beyond the legal definition of an offense. As noted above, § 924(c)(3)(B) operates in tandem with § 924(c)(3)(A). By focusing solely on the "elements" of the crime, § 924(c)(3)(A) requires an "elements-based categorical approach" by a court. *United States v. Evans*, 848 F.3d 242, 245 (4th Cir. 2017). Section 924(c)(3)(B), however, is necessarily understood to cover offenses *other* than those covered by § 924(c)(3)(A). And because § 924(c)(3)(A) already covers all offenses that have the legal element of physical force, § 924(c)(3)(B)'s substantial-risk-of-force standard naturally invites an inquiry that goes outside the four corners of an offense's legal definition.

The customary way to apply a "qualitative standard such as 'substantial risk'" is to refer "to real-world conduct," not to Platonic legal constructs. *Johnson*, 135 S. Ct. at 2561. "[D]ozens of federal and state criminal laws" use such terms, and "almost all" of them "require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*." *Id.* An "ordinary case" categorical approach is an anomaly, not the norm, and § 924(c)(3)(B)'s "substantial risk" inquiry can thus readily be understood as the kind of mixed question of law and fact that juries have long determined. *United States v. Gaudin*, 515 U.S. 506, 509-15 (1995).

An examination of the reasons for applying the categorical approach with respect to statutes that classify prior convictions illustrates why the categorical approach makes little sense when applied to § 924(c)(3)(B). The Supreme Court first endorsed a "categorical approach" interpretation in *Taylor v. United States*. *Taylor* primarily adopted the categorical approach due to ACCA's use of prior convictions. *See Taylor*, 495 U.S. at 600-02. At the "heart of the decision" was a limitation on the amount of evidence about the circumstances underlying prior convictions that the parties would be permitted to introduce for the first time at sentencing. *Shepard v. United States*, 544 U.S. 13, 23 (2005); *see Taylor*, 495 U.S. at 601 (explaining why

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9 - 6**

"the practical difficulties and potential unfairness of a factual approach are daunting" in that context). Prior convictions "that are counted for an ACCA enhancement are often adjudicated by different courts in proceedings that occurred long before the defendant's sentencing." *United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016). In such cases, the categorical approach serves the "'practical' purpose[]" of "promot[ing] judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." *Moncrieffe v. Holder*, 569 U.S. 184, 200-01 (2013) (citation omitted). The same is true for many statutes that incorporate § 16(b), including the immigration statute at issue in *Dimaya*. *See* 138 S. Ct. at 1218 (plurality opinion). The reasons for applying the categorical approach in that context have no direct analogue in the context of § 924(c)(3)(B), which does not involve prior convictions. Section 924(c)(3)(B) involves proof of real-world conduct.

As explained in cases following *Taylor*, a judge's resolution of the disputed facts underlying a defendant's prior conviction at sentencing would also be "too much like" the kind of factfinding that the Sixth Amendment requires a jury to conduct. *Shepard*, 544 U.S. at 25 (plurality opinion). Thus, in the context of the ACCA's residual clause, the categorical approach was required in order to comply with the "rule of reading statutes to avoid serious risks of unconstitutionality." *Id.* The same is true of many criminal statutes that incorporate § 16(b). *See, e.g.*, 8 U.S.C. § 1326(b)(2). It is not true of § 924(c)(3)(B).

The categorical approach thus serves a purpose when evaluating prior state convictions committed long ago in fifty state jurisdictions with divergent laws. But it does not serve that purpose in the context of § 924(c)(3)(B), where a jury has the facts of the underlying federal offense before it and must determine whether the defendant committed that offense before deciding whether the defendant's use, carrying, or possession of a gun violated § 924(c). In that

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9 - 7**

circumstance, "[t]he remedial effect of the 'categorical' approach is not necessary." *Robinson*, 844 F.3d at 141. In the context of § 924(c), no such remedy is required because a court is not analyzing the application of a single federal sentencing enhancement based on fifty states' varying statutes—a convoluted task. Rather, the "crime of violence" definition supporting the application of § 924(c) must be based on facts submitted to the jury. Adopting the underlying-conduct approach also satisfies any Sixth Amendment concerns. "[A]ny fact that increases the penalty for a crime" under § 924(c) *is* "submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see Robinson*, 844 F.3d at 143.

In the context of § 924(c)(3)(B), constitutional concerns counsel in favor of a case-specific, rather than a categorical, approach. Section 924(c)(3)(B) shares the exact language of § 16(b)—the provision at issue in *Dimaya*. Accordingly, the continued application of the categorical approach to § 924(c)(3)(B) raises concern about § 924(c)(3)(B)'s constitutional viability. A court is "obligated to construe [a] statute to avoid [constitutional] problems" if it is "'fairly possible'" to do so. *INS v. St. Cyr*, 533 U.S. 289, 300 (2001) (citations omitted); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). That is particularly true where, absent a reasonable limiting construction, a statute could be deemed void for vagueness. *United States ex rel. Att'y Gen. v. Delaware & Hudson Co.*, 213 U.S. 366, 407 (1909). This Court should not construe § 924(c)(3)(B) to make it unconstitutionally vague. In light of *Dimaya*, the better interpretation is that the statute permits a jury to consider the defendant's real-world conduct that is already before the jury in determining whether his offense qualifies as a crime of violence.

Many circuits and numerous judges have suggested that the categorical approach should not apply to § 924(c)(3)(B). *See, e.g.*, *St. Hubert*, 883 F.3d at 1334-37; *United States v. Eshetu*, 863 F.3d 946, 960-61 (D.C. Cir. 2017) (Millett, J., concurring); *In re Irby*, 858 F.3d 231, 234

(4th Cir. 2017); *Robinson*, 844 F.3d at 141; *United States v. Prickett*, 830 F.3d 760, 761, *overruled on reh'g*, 839 F.3d 697, 698 (8th Cir. 2016); *Shuti v. Lynch*, 828 F.3d 440, 449-50 (6th Cir. 2016); *United States v. Cravens,* 719 Fed. App'x 810, 817 (10th Cir. 2017) (O'Brien, J., concurring).  This Court should apply a similar analysis.

Invalidating § 924(c)(3)(B), rather than construing it in a manner that avoids constitutional concerns, would have real-world consequences that cannot be overlooked.  The surviving elements-based approach required under § 924(c)(3)(A), if not tempered by a case-specific approach under § 924(c)(3)(B), risks effectively immunizing from § 924(c) liability those who commit numerous factually violent crimes.  If § 924(c)(3)(B) is unconstitutionally vague because it requires a categorical approach, it is likely that the crimes it was meant to cover and other violent crimes will not be considered "crimes of violence" at all.  Since it first adopted the categorical approach in 1990, the Supreme Court has repeatedly cautioned against employing it to frustrate congressional intent.  *See Hayes*, 555 U.S. at 426-27; *Taylor*, 495 U.S. at 594.

This Court can avoid that result going forward by adopting the workable and constitutional case-specific approach with respect to § 924(c)(3)(B).  Applying such an approach, Duncan's crime under § 924(c)(3)(B) was clearly a crime of violence:  the jury specifically found that Duncan "intentionally killed the Victim" and "committed the offense after substantial planning and premeditation to cause the death of the Victim, D.G." in the Special Verdict Form for Count 7.  *See* CR Dkt. 564 at 3, 6.

III.     **Section 924(j) is a separate crime that requires a factual finding of murder.**

As previously discussed in the Government's response, Duncan's guilty plea and the jury's imposition of death required a factual finding that Duncan committed murder under 18 U.S.C. § 1111.  *See* 18 U.S.C. § 924(j)(1); CR Dkt. 2 at 4-5.  This heightened factual finding

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9 - 9**

renders § 924(j) a separate offense entirely. *See United States v. Melgar-Cabrera*, 892 F.3d 1053, 1057-59 (10th Cir. 2018); *see also United States v. Julian*, 633 F.3d 1250, 1253 (11th Cir. 2011). While discussing the addition of subsection (j) to § 924, the Ninth Circuit recognized that this subsection imposed a heightened sentence when a defendant violated § 924(c) and "additionally commits murder." *United States v. Staggs*, 152 F.3d 931, 932-33 (9th Cir. 1998) (unpublished). The heightened findings required under § 924(j) render the vagueness challenges to sentences under the ACCA and § 16(b) incomparable to a conviction under § 924(j), where the jury must find in fact that the defendant murdered the victim in the course of that offense. *Cf. United States v. J.J.*, 704 F.3d 1219, 1222 (9th Cir. 2013) ("In this case, there is no question that . . . second-degree murder, if committed by an adult, would be a felony crime of violence."); *United States v. Begay*, 567 F.3d 540, 552 (9th Cir. 2009), *overruled on other grounds*, 673 F.3d 1038 (9th Cir. 2011) ("Both first- and second-degree murder constitute crimes of violence.").

For the reasons previously discussed in the response brief, CV Dkt. 34 at 119-20, as well as the reasons discussed herein, Duncan's conviction under Count 7 remains valid.

Respectfully submitted this 22nd day of January, 2019.

BART M. DAVIS
United States Attorney
District of Idaho
By

*/s/ Syrena C. Hargrove*
SYRENA C. HARGROVE
Assistant United States Attorney

*/s/ Katherine L. Horwitz*
KATHERINE L. HORWITZ
Assistant United States Attorney

*/s/ Jeffrey B. Kahan*
JEFFREY B. KAHAN
Trial Attorney

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9 - 10**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2019, the foregoing was electronically filed with

the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing and

thereby a copy was served on the following parties or counsel:

| | |
|---|---|
| Lindsay Nicole Bennett<br>Office of the Federal Defender<br>801 I Street, 3rd Floor<br>Sacramento, CA 95814<br>lindsay_bennett@fd.org | ☐ United States Mail, postage prepaid<br><br>☐ Fax<br><br>☒ ECF filing<br><br>☐ E-mail |
| Kelly L. Culshaw<br>Federal Public Defender<br>801 I Street, 3rd Floor<br>Sacramento, CA 95814<br>Kelly_Culshaw@fd.org | ☐ United States Mail, postage prepaid<br><br>☐ Fax<br><br>☒ ECF filing<br><br>☐ E-mail |
| Samuel Richard Rubin<br>Federal Defender Services of Idaho<br>702 W. Idaho Street, Suite 1000<br>Boise, ID 83702<br>dick_rubin@fd.org | ☐ United States Mail, postage prepaid<br><br>☐ Fax<br><br>☒ ECF filing<br><br>☐ E-mail |

/s/ *Syrena C. Hargrove*
SYRENA C. HARGROVE
Assistant United States Attorney

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9 - 11**