HEATHER E. WILLIAMS, CA Bar No. 122664
Federal Defender
LINDSAY N. BENNETT, GA Bar No. 141641
Asst. Chief, Capital Habeas Unit, AFD
Lindsay_Bennett@fd.org
KELLY L. CULSHAW, CA Bar No. 304778
Chief, Capital Habeas Unit, AFD
Kelly_Culshaw@fd.org
Office of the Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-6666
Fax: (916) 498-6656

Attorneys for Petitioner,
JOSEPH EDWARD DUNCAN, III

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH EDWARD DUNCAN, III,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.  2:17-cv-00091-EJL<br>            2:07-cr-00023-EJL<br><br>**PETITIONER'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL BRIEF ON CLAIM 9** |

COMES NOW the petitioner, Joseph E. Duncan, III, by and through appointed counsel and responds to the Government's Second Supplemental Brief on Count 7 (Doc. 45) as follows:

## Introduction

After consistently agreeing with petitioner that the issue in this case is whether the kidnappings in Mr. Duncan's case qualify as crimes of violence under the residual clause of 18 U.S.C. § 924(c), in its Second Supplemental Brief on Count 7 ("Second Supp."), the Government now argues that the court should uphold Mr. Duncan's conviction under the elements clause.

Petitioner's Response to Govt's
Supplemental Brief on Claim 9                 1                 *Joseph Edward Duncan, III v. United States,*
                                                                Case No. 2:17-cv00091-EJL

Alternatively, the Government argues Mr. Duncan's § 924(c) conviction and death sentence should be upheld based on a crime that was not charged in the indictment, admitted, or sustainable on the facts in the record, murder under 18 U.S.C. § 1111.

For the reasons explained below, the court should find the elements clause arguments waived, and substantively without merit. The court should also reject the Government's §1111 argument as inconsistent with Mr. Duncan's Fifth Amendment right to trial on Indictment, and his Fifth and Sixth Amendment rights to be informed of the charges before entering a plea.

The conviction and death sentence on Count 7 are constitutionally infirm. Mr. Duncan's plea is also unconstitutional in that he was unaware that Count 7 did not charge a federal offense. Although death sentences were imposed not only on Count 7 but also on Counts 1 and 5, there can be no reasonable assurance that the jury would have imposed death sentences in a case involving not three death-eligible offenses, but only two. All three of Mr. Duncan's death sentences should be set aside.

**Background**

In Claim 9 of his § 2255 motion, Mr. Duncan alleged that the predicate offenses alleged in Count 7 of his indictment, i.e., kidnapping, and kidnapping resulting in death (Counts 1 and 2, respectively) were not violent felonies either under the "elements clause" or the "residual clause" of § 924(c). *See* [Corrected] Defendant's Motion for Collateral Relief (Doc. 4) at 167-74; *id.* at 173 ("Mr. Duncan was charged in Count 1 with the commission of a kidnapping under 18 U.S.C.§ 1201 (a) that resulted in death. Because that offense [kidnapping resulting in death] does not have as a necessary element the intentional use, attempted use, or threatened use of strong physical force against a person or property of another, it is not a 'crime of violence' within the meaning of § 924(c).)" *See also* Government's Response in Opposition to Motion for Collateral Relief (Doc. 34) at 110 (stating, "Duncan argues that Count 7 is invalid because the alleged predicate crimes (Count 1, kidnapping, and Count 2, kidnapping resulting in death, *see* (CR Dkt. 1 at 4-5), cannot satisfy § 924(c)(3)'s definition of a 'crime of violence.' *See* (CV Dkt. 4 at 167-74.).") The Government's responsive pleading consisted of an 11-page argument why

Petitioner's Response to Govt's
Supplemental Brief on Claim 9                    2                    *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

the court should conclude that Counts 1 and 2 satisfy the residual clause, *id*. at 110 to 120. This followed an express admission by the United States that neither Count 1 nor Count 2 satisfied the elements clause. *See id*. at 110-11 n. 36 ("Duncan is correct that the other definition of 'crimes of violence' in § 924(c)(3), the elements clause, does not apply. The **two predicate** crimes can be accomplished, at least in theory, without the use of force. *See, e.g., Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1127 (9th Cir. 2012) (holding that kidnapping can be committed without the use of physical force because it can occur through trickery and deceit). And that remains true even when a firearm is involved – it could go unused and even unseen.") (emphasis added).

Because much of the Response in Opposition relied on a prediction that the U.S. Supreme Court would reverse the Ninth Circuit's decision in *Dimaya v. Lynch*, 803 F. 3d 1110 (2015), sustaining a challenge to the identically worded residual clause of 18 U.S.C. §16(b), the United States was granted leave to rebrief the issue (as was Mr. Duncan) after the Supreme Court affirmed the Ninth Circuit. *See Sessions v. Dimaya*, 138 S.Ct. 1204 (2017). The Government's brief (Doc. 42) argued for 11 pages that *Sessions* had invalidated the residual clause of § 16(b), the residual clause of 924(c)(3)(B) should be interpreted differently from 16(b). Although lacking an express repetition of the concession that the elements clause of 924(c)(3)(A) does not apply, that concession was plainly implied. *See, e.g., id*. at 6 (arguing that the because the elements clause § 924(c)(3)(A) looks to the legal definition of a crime, this court should look "outside the four corners of an offense's legal definition" to determine whether an offense satisfies involves a "substantial risk of force" as required by the residual clause of § 924(c)(3)(B).) *See also id*. at 5 (arguing that because the residual clause of § 924(c)(3) "uses the term 'involves,'" "[a] jury can readily determine whether a defendant's underlying 'offense by its nature, involves' the use of physical force" under the residual clause. In the Government's view this solves the vagueness problem of the § 16 residual clause noted by the *Sessions* court.)

In *United States v. Davis*, 139 U.S. 2319 (2019), the U.S. Supreme Court rejected the Government's attempt to distinguish *Sessions* and held that the § 924(c)(3) residual clause, like § 16's residual clause, is impermissibly vague. With all hope of sustaining the conviction and

Petitioner's Response to Govt's
Supplemental Brief on Claim 9                3

*Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

sentence under the residual clause gone, the Government adopts a new, and contrary position, claiming the case to be about the elements clause instead. Without even acknowledging its prior express concession that the predicate offense of kidnapping resulting in death does not satisfy the elements clause, the Government now contends that supports his conviction under the elements clause of § 924(c), as does his supposed conviction of murder under 18 U.S.C. § 1111. This argument should be deemed waived, but whether waived or not, both are without merit. Both arguments are fundamentally inconsistent with the Supreme Court's pronouncement that even in § 924 cases the categorical approach governs. What matters is not how the crime in the instant case was committed or even how such crimes are usually committed, by how the crimes are defined.

### Waiver by Judicial Admission

Rule 8 of the Federal Rules of Civil Procedure require a party in responding to a pleading to "admit or deny the allegations asserted against it by an opposing party." Fed.R.Civ.P. 8(b)(1)(B). In responding to Mr. Duncan's allegation that the crimes alleged in Counts 1 and 2 of the indictment were not crimes of violence under the elements clause of § 924(c), the United States admitted the allegation, stating in pertinent part: "Duncan is correct that the other definition of 'crimes of violence' in § 924(c)(3), the elements clause, does not apply." Even as the Government's reliance on the residual clause all but slipped through its fingers with the Supreme Court's *Sessions* decision, the Government continued to double down, limiting the entirety of its first supplemental brief to arguments involving the residual clause. Only when Davis eliminated all hope of a residual clause victory did the Government shift gears and claim this case is actually about the elements clause.

The Government should be held to its tactical (and correct) initial decision to concede the inapplicability of the elements clause. An admission in a plea or answer is binding on the party making it and may be viewed as a conclusive or judicial admission. 71 C.J.S. Pleading § 195. In that event, the admission is conclusive as to the admitted fact, and no evidence may be shown to contradict it. *Id*. "Facts admitted in an answer, as in any pleading, are judicial admissions that

Petitioner's Response to Govt's
Supplemental Brief on Claim 9      4      *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

bind the defendant throughout the litigation." *Crawford v. Franklin Credit Management Corp.*, 758 F.3d 473, 491 (2d Cir. 2014) "Generally speaking, a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 134 (1st Cir. 1997). "It is a well-settled rule that a party is bound by what it states in its pleadings. Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Help At Home Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001).

Under appropriate circumstances a party may seek to have an admission set aside. *See New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963); *Armour v. Knowles*, 512 F.3d 147, 154 n.13 (5th Cir. 2007). This case presents no such circumstances. The Government's current filing simply ignores its own explicit admission in the Answer (Doc. 34) and its second implicit admission of its first supplemental brief (Doc. 42). The Government chose for strategic reasons to offer a concession on the elements clause and focus on the residual clause. The Supreme Court's opinions in *Sessions* or *Davis* changed nothing about the elements clause. By conceding the inapplicability of the elements clause (a concession that was manifestly proper), the Government put all of its eggs in the residual clause basket and lost. That provides no just reason for withdrawing from the judicial admission.

Even if withdrawal were permitted, the Government still cannot unring the bell. The concession stands as powerful corroboration of the arguments presented below that the elements clause does not apply.

### Kidnapping Resulting in Death

Without citation to direct authority, the Government now asserts – in flat contradiction to its prior concession -- that the offense of "[k]idnapping resulting in death has as an element the use, attempted use, or threatened use of physical force against the person or property of another" and therefore constitutes a crime of violence under the elements clause of § 924(c). Doc. 45, (Second Supp.) at 6. The Government then asserts: "To prove the offense of kidnapping

resulting in death, the government *will nearly always have to prove* that the victim was subjected to 'physical force' within the meaning of § 924(c)(3)(A).   Establishing the required connection will, as in this case, *virtually always require proof* that force capable of causing physical pain or injury or of overcoming a victim's resistance was used during the commission of the offense—whether or not the force was direct or intentional." *Id*. at 6 -7.  Assuming *arguendo* that most kidnappings resulting in death involve violence, to allow for existence of cases, even if small in number, that do not require the use of force is to concede that the element of force is not a requirement.

Starting with the language of the statute, as we must, it is clear that physical force or violence is not required.  Title 18 U.S.C. § 1201(a) subjects any person who unlawfully "seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise" certain persons and additionally provides for a sentencing enhancement "if the death of any person" results.  The conclusion that this phraseology was intended to require neither *mens rea* nor physical force is:

> supported by a long line of cases interpreting the phrase "if death results" under analogous statutes. *See, e.g., United States v. Schwanke,* 598 F.2d 575, 579 (10th Cir.1979) ("if death results" under 18 U.S.C. § 844(i) analogized to felony murder); *United States v. Piche*, 981 F.2d 706, 711 (4th Cir.1992) ("'if death results' requires only that death foreseeably and naturally, rather than directly and intentionally, result [sic] from the rights-violating conduct"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir.1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.'"); *United States v. Guillette*, 547 F.2d 743, 749 (2d Cir.1976) ("We find the principle of proximate cause embodied in [18 U.S.C.] § 241 through the phrase 'if death results.'").

*United States v. Woodlee,* 136 F.3d 1399, 1405 (10th Cir. 1998).  "[T]he use of the passive voice evinces a concern with "whether something happened—not how or why it happened." *United States v. Burkholder*, 816 F.3d 607, 614–18 (10th Cir. 2016) (*quoting Dean v. United States*, 556 U.S. 568, 572 (2009)).  In construing similar language appearing in 18 U.S.C. § 841(b)(1)(C), which provides for enhanced penalties where death results from the distribution of controlled substances, the Ninth Circuit wrote:

Petitioner's Response to Govt's
Supplemental Brief on Claim 9                     6

*Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

> The plain language of § 841(b)(1)(C) demonstrates that proximate cause is not a required element. Congress specified that the heightened sentence would apply "if death ... results" from the distribution of a controlled substance. This passive language unambiguously eliminates any statutory requirement that the death have been foreseeable. According to its language, as long as death "results" from the use of a described controlled substance, the person convicted of distributing the substance "shall be sentenced to a term of imprisonment of not less than twenty years or more than life." *Id*.

*United States v. Houston*, 406 F.3d 1121, 1124–25 (9th Cir. 2005).

The Government attempts to make much of the fact that "physical force" has been construed broadly. *See* Doc. 45 (Second Supp.) at 6 (citing *United States v. Castleman*, 572 U.S. 157 (2014). In *Castleman*, the Supreme Court explained that poisoning constitutes physical force, albeit indirect, whenever the perpetrator "employ[s] poison *knowingly* as a device to cause physical harm." *Id*. at 1415 (emphasis added). *Castleman* does not govern where, as here, a statute does not require any intent to kill. While it may be true that a death from natural causes that occurs during a kidnapping and which could be shown to have occurred absent the kidnapping would not support a "death results" murder conviction under § 1201(b), *see Burrage v. United States*, 571 U.S. 204, 210-14 (requiring but-for causation of a death that "results from" a Controlled Substances Act violation), that does not mean that "kidnapping resulting in death entails the use of violent, physical force." Doc. 45 (Second Supp.) at 6.

The resulting in death provision of § 1201(b) is, by its terms, triggered even when the death that results is not the death of the person kidnapped. It requires neither intent, nor violence, nor use of force, but rather only but-for causation. *Cf. Burrage v. United States, supra.* "Results from" imposes only the requirement of actual causality. This requires merely proof "'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *University of Tex. Southwestern Medical Center v. Nassar*, 570 U.S. 338, 346-47 (2013) (*quoting Restatement of Torts* § 431, *Comment a* (1934)).

Petitioner's Response to Govt's
Supplemental Brief on Claim 9     7     *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

The enhanced penalty provision of § 1201 is essentially the felony murder rule with kidnapping as the underling felony. Felony murder "encompasses a far wider range of individual culpability than deliberate and premeditated murder. It includes not only the latter, but also a variety of unintended homicides resulting from reckless behavior, or ordinary negligence, or pure accident; it embraces both calculated conduct and acts committed in panic or rage, or under the dominion of mental illness, drugs, or alcohol; and it condemns alike consequences that are highly probable, conceivably possible, or wholly unforeseeable." *People v. Dillon*, 668 P.2d 697, 719 (Cal. 1983). Contrary to the Government's assertion, it requires no flight of imagination to see how a kidnapping might result in an unintended, accidental death: the participants might be involved in an automobile accident, might voluntarily ingest dangerous drugs, might suffer a medical emergency for which treatment would have been available but for the kidnapping, etc. The Government argues it would be unlikely, perhaps even impossible, for death to be imposed in any such case. *See* Doc. 45 (Second Supp.) at 8 ("The Government knows of no such case, and – as explained above – no such case *could* exist in the capital context, in which kidnapping resulting in death must [sic] always include an additional element of violence.) That is, of course, irrelevant. The issue is whether using a firearm in the commission of a kidnapping that results in a death makes one eligible for a death sentence, not whether a death sentence would, or could, be the ultimate result.

To say that a crime involves the use of force "naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 542 U.S.1, 9-10 (2004). Thus, in *United States v. Vederoff*, 914 F.3d 1238 (9th Cir. 2019), the court found that felony murder as defined by Washington State law is not a "crime of violence" under the force clause. The court wrote:

> Washington law imposes liability for negligent or even accidental felony murder. *See, e.g., State v. Leech*, 114 Wash.2d 700, 790 P.2d 160, 164 (1990) ("The purpose of the felony murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit."). The statute is therefore overbroad as compared to a generic crime of violence.

Petitioner's Response to Govt's
Supplemental Brief on Claim 9          8          *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

The resulting in death element of § 1201 does not require that death be the result of physical force. The sentencing enhancement provision does not convert kidnapping into a crime of violence.

Even if the court were to conclude kidnapping resulting in death qualifies as crime of violence the conviction and sentence on Count 7 would still be unconstitutional. The Government could have charged Mr. Duncan with two § 924(c) counts – one for using a firearm in the commission of the kidnapping and one for using a firearm in the commission of a kidnapping resulting in death. It chose not to do so, however. Instead, it chose to aggregate the two alleged underlying offenses into a single firearm count. As a result, there is no plea to a severable charge of using a firearm in the commission of a kidnapping resulting in death. Under *Shepard v. United States*, 544 U.S. 13, 26 (2005), a court cannot lawfully make a "crime of violence" finding unless the *Shepard* documents establish with "certainty" that the defendant "necessarily" pled guilty to elements constituting a "crime of violence." *Shepard*, 544 U.S. at 21-22, 23. "[P]lausibility or even likelihood" that the defendant pled guilty to elements constituting a "crime of violence" will not suffice. *United States v. Clay*, 627 F.3d 959, 967 (4th Cir. 2010). This "demand for certainty" avoids "evidentiary inquiries into the factual basis for the conviction" that the categorical framework forbids. *Shepard*, 544 U.S. at 21. This stringent standard comports with "[t]he point of the categorical inquiry" which "is not to determine whether the defendant's conduct *could* support a conviction for a crime of violence, but to determine whether the defendant was *in fact convicted* of a crime that qualifies as a crime of violence." *Fuertes*, 805 F.3d at 498.

Under this demand for certainty, where a defendant pleads guilty, for example, to disjunctive elements of a statute, there is a presumption that the plea was to the "least serious" of the disjunctive statutory elements of the statute. *United States v. Chapman*, 666 F.3d 220, 227 (4th Cir. 2012). This is true even when a count in the indictment alleges the alternative elements in the conjunctive. As the Fourth Circuit held in *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011), and again in *Chapman*, 666 F.3d at 228, the mere fact that a count in an indictment

Petitioner's Response to Govt's
Supplemental Brief on Claim 9                9                *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

charges alternative elements of a statute in the conjunctive (for example, a § 924(c) count which alleges both Hobbs Act robbery *and* Hobbs Act conspiracy as § 924(c) predicates) does not mean that the defendant necessarily pled guilty to both sets of elements. "Indictments often allege conjunctive elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty." *Vann*, 660 F.3d at 774 (quoting *Omari v. Gonzales*, 419 F.3d 303, 308 n.10 (5th Cir. 2005)). Therefore, "when a defendant pleads guilty to a formal charge in the indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct" unless Shepard documents conclusively establish otherwise. *Chapman*, 666 F.3d at 227-28. And if the least serious of the disjunctive elements is broader than the § 924(c) "crime of violence" definition, then the offense categorically fails to constitute a "crime of violence" and cannot support a § 924(c) conviction.

In *Young v. Holder*, 697 F.3d 976, 987–89 (9th Cir. 2012), *overruled on other grounds by Marinelarena v. Barr*, No. 14-72003, 2019 WL 3227458 (9th Cir. July 18, 2019), the Ninth Circuit explained:

> The fact that a guilty plea admits all elements necessary to sustain a conviction does not imply that it also admits all unnecessary or duplicative elements charged as alternative theories of the crime.
>
> Indeed, holding that pleading guilty to a charging document that alleges "A and B" necessarily admits "A" *and* "B" would create inconsistency in the application of the modified categorical framework to jury convictions and guilty pleas. We have held that, under the modified categorical approach, a defendant found guilty *by a jury* under an indictment alleging "A and B" was not necessarily convicted of both "A" and "B." *United States v. Espinoza–Morales*, 621 F.3d 1141, 1149–52 (9th Cir.2010). In those circumstances, assuming that "A" would qualify as a predicate offense and "B" would not, the jury was not "*actually required* to find all the elements" of the generic crime, because the jury could have based its conviction on the defendant's commission of "B" alone. *Id.* at 1151 (emphasis added) (internal quotation marks omitted); *see id.* at 1149–50 (holding that the prior conviction for sexual battery did not fit the federal definition because, "[e]ven though the state charged [the defendant] in the

conjunctive—with accomplishing the penetration by means of force, violence, duress, menace *and* fear—this charge could have supported a conviction based on duress alone"). Unless the jury's verdict form specified (or the jury instructions made clear) that the finding of guilt necessarily rested on the defendant's commission of "A," the conviction would not qualify as a predicate offense. *Id.* at 1150–52. ….["W]hen either "A" or "B" could support a conviction, a defendant who pleads guilty to a charging document alleging "A and B" admits only "A" or "B." Thus, when the record of conviction consists only of a charging document that includes several theories of the crime, at least one of which would *not* qualify as a predicate conviction, then the record is inconclusive under the modified categorical approach.

### The Uncharged, Unproven Murder under 18 U.S.C. § 1111

Finally, the Government argues that even if kidnapping resulting in death is not a crime of violence, the conviction and death sentence on Count Sever should be upheld because "[a] second and independent basis exists to support Count 7: federal murder." Doc. 45 (Second Supp.) at 8. The court should reject this argument. In addition to the problem of waiver discussed above, it suffers from two fatal flaws. Mr. Duncan was not charged with a § 1111 murder, and there has been no showing of § 1111 jurisdiction in this case.

The Government acknowledges that Mr. Duncan was never charged with murder under § 1111, either as a separate count or as an underlying crime of violence in Count 7. *See* Doc. 45 (Second Supp.) at 10 ("To be sure, Duncan was not charged… with federal murder…"). It then claims that "no independent charge is necessary"). *Id*. What the Government does not acknowledge is that whether or not an *independent* charge is necessary, Count 7 does not charge a § 1111 murder *as the underlying crime of violence*. This is not some trifle to be dismissed with a "to be sure" wave of the hand. It is a problem of constitutional magnitude.

The Fifth Amendment provides that prosecutions "for a capital, or otherwise infamous crime" must be instituted by "a presentment or indictment of a Grand Jury." *See Ex Parte Wilson*, 114 U.S. 417, 427 (1885); *United States v. Wellington,* 754 F.2d 1457, 1462 (9th Cir. 1982). It thereby guarantees a criminal defendant "[the] right to stand trial only on charges made by a grand jury in its indictment." *United States v. Garcia–Paz*, 282 F.3d 1212, 1215 (9th

Petitioner's Response to Govt's
Supplemental Brief on Claim 9       11       *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

Cir.2002). After an indictment has been returned and criminal proceedings are underway, the indictment's charges may not be broadened by amendment, either literal or constructive, except by the grand jury itself. *See Stirone v.United States*, 361 U.S. 212, 215–16 (1960); *United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir.1983). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984); *see also United States v. Dipentino*, 242 F.3d 1090, 1094 (9th Cir.2001) ("A constructive amendment 'involves a change, whether literal or in effect, in the terms of the indictment.'") *(quoting Jones v. Smith*, 231 F.3d 1227, 1232 (9th Cir. 2000)).

Count 7 of the indictment is clear. It charges Mr. Duncan with a violation of § 924(c) by using a firearm in the course of committing one count of kidnapping resulting in death and one count of simple kidnapping. Mr. Duncan was neither charged with nor entered a plea of guilty to a charge of violating § 924(c) by using a firearm in the course of violating § 1111. To recast the charge as the Government urges would violate Mr. Duncan's Fifth Amendment rights. Further, to recast the plea as the Government urges would violate Mr. Duncan's rights to be informed of the charges and would invalidate the plea. By definition, there can be no knowing, intelligent and voluntary decision to plead guilty where the charges are subject to redefinition during post-conviction review.

The Government makes much of the fact that Count 7 alleges that the cause of death that resulted from the kidnapping alleged in Count 1 was "murder (as defined in section 1111)." Doc. 45 (Second Supp.) at 9-12. The Government's reliance is misplaced. That reference is the basis of the § 924(j) sentencing enhancement, which comes into play only after a predicate violation of § 924(c) has occurred.[1]

---

[1] 18 U.S.C. § 924(j) provides in relevant part:
> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—
> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life.

Petitioner's Response to Govt's
Supplemental Brief on Claim 9     12     *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

Additionally, the indictment against Mr. Duncan nowhere alleges that any of the crimes occurred within the special maritime or territorial jurisdiction of the United States, which is a jurisdictional prerequisite to a § 111 prosecution. Mr. Duncan's plea did not admit that, and the record contain no evidence of the jurisdictional status of the lands where the crimes occurred.

The Lolo National Forest was first established on September 20, 1906. On December 16, 1931 part of Missoula National Forest was added to it, followed by portions of Selway National Forest in 1934, and part of Cabinet National Forest in 1954. Prior to 1940, courts applied a rebuttable presumption of acceptance by the federal government to jurisdiction over public lands that it owned. The Supreme Court held that when a state cession statute "conferred a benefit, the acceptance of the act is to be presumed in the absence of any dissent on [the federal government's] part." *Fort Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 528 (1885); *see also Benson v. United States,* 146 U.S. 325, 330 (1892) (same). When Montana was admitted to Statehood the Enabling Act 25 Stat. 676 § 4, "disclaimed on behalf of the people of the proposed state 'all right and title' to the unappropriated public lands lying within the boundaries of the proposed state. However, the Enabling Act did not consent or cede exclusive jurisdiction to the United States over the public lands." *Wagner v. State*, 889 P.2d 1189, 1191 (1995).

With the passage of 40 U.S.C. § 255 (now 40 U.S.C. § 3112) in 1940, the federal government had to start giving notice regarding acceptance of jurisdiction over public lands acquired thereafter. *Paul v. United States*, 371 U.S. 245, 264 (1963). The record is silent as to which portion or portions of the Lolo National Forest were involved in any of the crimes alleged or admitted. The jurisdictional status of public lands as to which the United States has only a proprietary interest is complex and confusing, especially as to lands acquired after 1940. *See Roger W. Haines, Jr., Crimes Committed on Federal Property - Disorderly Jurisdictional Conduct*, 4 Crim. Just. J. 375, 393-95 (1981).

Petitioner's Response to Govt's
Supplemental Brief on Claim 9      13      *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

It is therefore not surprising that the indictment alleges no criminal violations occurring within the special maritime and territorial jurisdiction of the United States. To attempt to read such allegations and proof into the indictment and plea would, as above, violated Mr. Duncan's constitutional rights under the Fifth, Sixth, and Eighth Amendments. The Government's argument should be rejected.

## Conclusion

For all of the forgoing reasons, the court should reject hold the Government to its judicial admission, reject its defense of the conviction and sentence on Count 7, invalidate Mr. Duncan's plea and set aside the death judgment on all counts.

DATED: August 16, 2019          RESPECTFULLY SUBMITTED,

HEATHER E. WILLIAMS
Federal Defender

*/s/ Lindsay N. Bennett*
LINDSAY N. BENNETT
Asst. Chief, Capital Habeas Unit, AFD

*/s/ Kelly L. Culshaw*
KELLY L. CULSHAW
Chief, Capital Habeas Unit, AFD

Attorneys for Petitioner,
JOSEPH EDWARD DUNCAN, III

Petitioner's Response to Govt's
Supplemental Brief on Claim 9                    14                    *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of August, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Bart M. Davis
United States Attorney
United States Attorney's Office
Washington Group IV
800 Park Blvd., Suite 600
Boise, Idaho 83712

Katherine L. Horwitz
Assistant United States Attorney
Email:  Katherine.horwitz@usdoj.gov
United States Attorney's Office
Washington Group IV
800 Park Blvd., Suite 600
Boise, Idaho 83712

Syrena C. Hargrove
Assistant United States Attorney
Email:  Syrena.hargrove@usdoj.gov
United States Attorney's Office
Washington Group IV
800 Park Blvd., Suite 600
Boise, Idaho 83712

Jeffrey B. Kahan
Trial Attorney
Email:  Jeffrey.kahan@usdoj.gov
U.S. Department of Justice
Capital Case Section
1331 F Street, NW; 6th FL
Washington, DC  20530

*/s/ Lindsay N. Bennett*
LINDSAY N. BENNETT

Petitioner's Response to Govt's
Supplemental Brief on Claim 9     15     *Joseph Edward Duncan, III v. United States,*
Case No. 2:17-cv00091-EJL