BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
SYRENA C. HARGROVE, IDAHO STATE BAR NO. 6213
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE:  (208) 334-1211
FACSIMILE:  (208) 334-1413
E-MAIL:  syrena.hargrove@usdoj.gov; kate.horwitz@usdoj.gov

JEFFREY B. KAHAN, PENNSYLVANIA BAR NO. 93199
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE, CAPITAL CASE SECTION
E-MAIL:  jeffrey.kahan@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH EDWARD DUNCAN, III, <br><br> Movant, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Case No.  2:17-CV-00091-EJL <br> 2:07-CR-00023-EJL <br><br> **GOVERNMENT'S REPLY, SECOND SUPPLEMENTAL BRIEFING ON COUNT 7 (Claim 9)** |

**INTRODUCTION**

Duncan was charged with, and admitted, the elements of premeditated murder using a firearm.  He specifically admitted that, "with malice aforethought, [he] did unlawfully kill D.G. by shooting him with the firearm willfully, deliberately, maliciously and with premeditation."  (CR Dkt. 1 at 4-5) and (CR Dkt. 204 at 22, 24-25.)  He also admitted the fact necessary to establish jurisdiction:  that the crimes had occurred on the Lolo National

Forest. Thus, § 2255 relief on Count 7 should be denied as that count is supported, at minimum, by premeditated murder.

In addition, Duncan's capital sentence for kidnapping resulting in death included a specific finding by the jury that he intended to kill his victim. Accordingly, even assuming the continuing validity of the Ninth Circuit's decision in *United States v. Begay*, No. 14-10080, 2019 WL 3884261 (Aug. 19, 2019), there is no *Begay* problem here. In this case, the jury specifically found that Duncan intended, and effected, a kidnapping by violent force that resulted in D.G.'s death. He accordingly accomplished the crime with a mens rea far higher than recklessness. Thus, capital kidnapping resulting in death also supports Count 7.

## INTERVENING LAW

After Duncan filed his answering brief in this case, the Ninth Circuit held, in *Begay*, that second degree murder cannot satisfy the definition of a crime of violence because the element of "malice aforethought" can be satisfied by reckless conduct. *Begay*, 2019 WL 3884261, at *5.[1] The Court held that a crime of violence requires the intentional use of force. *Id.* The Ninth Circuit held similarly in *United States v. Orona*, 923 F.3d 1197, 1203 (9th Cir. 2019), that the Armed Career Criminal Act's definition of a "violent felony" did not include offenses that can be committed recklessly. Other circuits have reached the contrary conclusion. *See, e.g.*, *In re Irby*, 858 F.3d 231, 234-36 (4th Cir. 2017) and *Thompson v. United States*, 924 F.3d 1153, 1158-59 (11th Cir. 2019). Thus, the issue is in contest. The Government filed a petition for rehearing en banc in *Orona* last week.

---

[1] *Begay* involved no argument regarding the divisibility of the statute. *Id.* at 3. Thus, if second degree murder is divisible into four separate offenses based on mental state, the other three mental states besides depraved heart would be crimes of violence.

**GOVERNMENT'S REPLY, SECOND SUPP. BRIEFING ON COUNT 7 (CLAIM 9)—2**

*Begay* has no effect on the Government's argument regarding first degree, premeditated murder, which remains a crime of violence.  It also has no effect on the Government's argument regarding capital kidnapping resulting in death, which was accompanied by a specific jury finding that Duncan had intentionally killed his victim.  (CR Dkt. 564 at 3, 6.)  *Begay* does, however, eliminate the Government's argument that kidnapping resulting in death, when taken on its own, is a crime of violence.  The Government maintains that kidnapping resulting in death qualifies as a crime of violence, and that *Begay* was wrongly decided.  That ongoing dispute does not affect the validity of Duncan's capital conviction, however.

## ARGUMENT

### I.     Murder remains a crime of violence and supports Count 7.

Count 7 alleged the elements of first-degree, premeditated murder, and Duncan's plea to that count necessarily included his admissions to them.  He also admitted that the murder occurred on federal land.  (CR Dkt. 1 at 1-2, 4-5; CR Dkt. 204 at 22, 24-25.)  Moreover, the jury independently found that Duncan had committed premeditated murder.  *See* (CR Dkt. 562 at 3, 6.)  Premeditated murder thus supports Count 7.

*Begay* does not affect premeditated murder's status as a crime of violence, as that crime requires a "willful, deliberate, malicious, and premeditated killing."  18 U.S.C. § 1111(a).  Because the offense cannot be committed with mere recklessness, no *Begay* problem exists.  *See Begay*, 2019 WL 3884261, at *5.  Furthermore, as set forth in the statute, premeditated murder is divisible from other forms of murder.  *See* 18 U.S.C. § 1111(a) (describing additional proof beyond malice aforethought required to establish first degree murder, including "willful, deliberate, malicious, and premeditated killing); *United States v.*

**GOVERNMENT'S REPLY, SECOND SUPP. BRIEFING ON COUNT 7 (CLAIM 9)—3**

*Free*, 841 F.2d 321, 325 (9th Cir. 1988) (discussing the elements of first degree murder, including premeditation); (CR Dkt. 1 at 4-5.) Duncan cannot meet his burden on § 2255 of showing a fundamental defect that results in a miscarriage of justice from his sentence on Count 7. The indictment charged Duncan with the elements of premeditated murder and his plea of guilty admitted them.

For the same reason, the Fifth Amendment right to indictment by grand jury was satisfied. The grand jury clause states: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Applying this constitutional command, the Ninth Circuit has long recognized that an indictment is constitutionally sound when it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and enable him to plead double jeopardy. *See United States v. Alvarez-Ulloa*, 784 F.3d 558, 570 (9th Cir. 2015) (citing *Elder v. United States*, 142 F.2d 199, 200 (9th Cir. 1944)); *see also Hagner v. United States*, 285 U.S. 427, 431 (1932). Here, the indictment explicitly charged the elements of first-degree, premeditated murder under 18 U.S.C. § 1111, and Duncan admitted the same. (CR Dkt. 1 at 4-5); *see United States v. Ruelas*, 106 F.3d 1416, 1418-19 (9th Cir. 1997).[2] Duncan thus cannot claim he had insufficient notice of the crime alleged. *See United States v. Barrett*, 496 F.3d 1079, 1092-95 (10th Cir. 2007).

Murder was not charged as a separate count, but nothing requires it to have been.[3] The Supreme Court has long recognized that "the right to a grand jury is not normally

---

[2] No doubt, as charged, jeopardy attached to the allegations of murder in Count 7. *See United States v. Hector*, 577 F.3d 1099, 1102-03 (9th Cir. 2009).

[3] Nor does § 924(c) require that the underlying predicate be separately charged, so long as it is proven. *United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir. 1989) (per curiam).

**GOVERNMENT'S REPLY, SECOND SUPP. BRIEFING ON COUNT 7 (CLAIM 9)—4**

violated by the fact that the indictment alleges more crimes or other means of committing the same crime," "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment." *United States v. Miller*, 471 U.S. 130, 136 (1985); *see also Alvarez-Ulloa*, 784 F.3d at 571 (recognizing that "the touchstone of the constructive amendment inquiry is whether 'the defendant was given notice of the "*core of criminality*" to be proven at trial'" (quoting *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1983)) (emphasis in original)). Duncan's indictment fits that bill; it "fully and clearly" identifies each element to premeditated murder under 18 U.S.C. § 1111(a). (CR Dkt. 1 at 4-5.) And because Duncan pleaded guilty to every fact underlying that allegation, "the evidence [wa]s sufficient with respect to" that offense, and Duncan's capital verdict on Count 7 stands. *Turner v. United States*, 396 U.S. 398, 420 (1970).

Duncan also admitted the fact necessary to establish the jurisdictional element of § 1111(b) when he acknowledged that the crime occurred in the Lolo National Forest. (CR Dkt. 1 at 1-2, 4-5; CR Dkt. 204 at 22, 24-25.) He now ignores this admission and seeks to cloud the clarity it created by noting that federal jurisdiction over land acquired after 1940 is complex, and that part of Lolo National Forest was created from the Cabinet National Forest in 1954. Duncan accordingly suggests that federal jurisdiction over a portion of Lolo National Forest—the Cabinet portion—is unclear. That is not the case, however. The United States has long exercised jurisdiction over the Cabinet National Forest, as it was created in 1906. https://www.webcitation.org/6ENvCUJPk PermaLink to Appendix I, The National Forests of the United States. The 1954 incorporation of that territory changed nothing. All the lands in the Lolo National Forest were subject to pre-1940's federal jurisdiction. Duncan's admission to the location was thus an admission of jurisdiction.

**II.** *Begay* **was wrongly decided, and kidnapping resulting in death should qualify as a crime of violence. But where—as here—the jury actually found intent and solved the** *Begay* **problem, § 2255 relief is not warranted.**

      **A.**     *Begay* **affects only the status of generic kidnapping resulting in death.**

Section 924(j) does not specify which mens rea applies when the killing is murder. *See* 18 U.S.C. § 924(j)(1). Accordingly, the statute suffers from the same problem as the second degree murder statute in *Begay*: It can be committed with a mens rea of recklessness. Thus, as long as *Begay* and *Orona* stand, and so long as a specific degree of murder with a specific mens rea is not charged, non-capital kidnapping resulting in death cannot be a crime of violence. Because *Orona* is being challenged, the Government maintains its argument in this case that kidnapping resulting in death is a crime of violence.[4]

      **B.**     **The jury's finding regarding intent to kill, required under 18 U.S.C. § 3592(c) for the capital sentence, eliminates the Begay problem in Duncan's case.**

*Begay* acknowledged the possibility that second degree murder—when committed with a higher mens rea than recklessness—might qualify as a crime of violence. *Begay*, 2019 WL 3884261, at *3. This case squarely implicates that question. The jury found, pursuant

---

[4]     Contrary to Duncan's claim, the Government's opening brief did not waive this contention. The Government stated in footnote 36 that kidnapping resulting in death could "at least in theory" occur without the use of force. *See* (CV Dkt. 34 at 110, n.36.) But that statement did not waive the argument that kidnapping resulting in death qualifies as a crime of violence. The judicial admission doctrine applies to admissions of *facts* in *pleadings*, not to statements of law. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226-27 (9th Cir. 1988)[4]; *accord* (CV Dkt. 46 at 4-5 (discussing out-of-Circuit cases that apply the doctrine to factual issues in pleadings).) The question whether kidnapping resulting in death qualifies as a crime of violence is a pure question of law, not a question of fact. *See, e.g.*, *Begay*, 2019 WL 3884261, at *3. Thus, the doctrine has no application here. That said, the statement in footnote 36 was incomplete. (CV Dkt. 34 at 110, n.36.) The fact that a crime can occur "at least in theory" without the use of force does not end the inquiry. Duncan bears the burden of establishing "a realistic probability, not a theoretical possibility" that the statute is overbroad. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). And he has not done so.

**GOVERNMENT'S REPLY, SECOND SUPP. BRIEFING ON COUNT 7 (CLAIM 9)—6**

to § 3592(c), that Duncan intended to kill D.G. using a firearm in the course of his kidnapping resulting in death. *See* (CR Dkt. 569 at 3.) That jury finding negates any *Begay* problem here. D.G.'s death resulted from Duncan's intentional use of force.

Given the jury's express finding, no fundamental defect or any miscarriage of justice occurred. Capital kidnapping resulting in death, with the jury's required finding of intent, does not suffer from the *Begay* problem and does not warrant relief under § 2255.

**C.      Duncan's disjunctive argument fails.**

Duncan responds that, because Count 7 charged both kidnapping and kidnapping resulting in death, the record does not identify the particular offense that underlay his plea to that count. It could have been solely kidnapping. (CV Dkt. 46 at 9-10.)

That argument ignores context. This was not a case involving a plea to one count with disjunctive elements, to only one of which the defendant pleaded. This was a plea to separate counts—both to kidnapping and to kidnapping resulting in death—and to a third count that built upon those two, separately-admitted counts. (CR Dkt. 2 at 1-2, 4-5.) That fact distinguishes this case from the cases Duncan cites. *See* (CV Dkt. 46 at 9-10). *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012), involved an indictment that charged disjunctive clauses of § 922(g)(8)(C)(i) and (ii), which describe the kinds of restraining orders. *Id.* at 224, 227. The kind of restraining order was nowhere else charged and pleaded to, and the court thus had to use the less serious clause. *Id.* at 227. Likewise, in *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011), the defendant was charged "in a single charging document alleging alternative types of conduct in the conjunctive," and he had not pleaded guilty, separately, to the two alternatives. Thus, the alternative carrying the lesser punishment was presumed to have been the subject of his plea. *Id.* Finally, *Young v. Holder*,

**GOVERNMENT'S REPLY, SECOND SUPP. BRIEFING ON COUNT 7 (CLAIM 9)—7**

697 F.3d 976, 987-89 (9th Cir. 2012), *overruled on other grounds by Marinelarena v. Barr*, No. 14-72003, 2019 WL 3227458 (9th Cir. July 18, 2019), involved two alternative predicates that were not separately charged in other counts. *Id.* at 987. Accordingly, it was unclear if the jury had actually found all the elements of each predicates; it might only have found the elements of one. *Id.* Thus, the court had to use the less serious one. *Id.* There is simply no danger here that all of the elements of both predicates were not established. The indictment separately charged kidnapping and kidnapping resulting in death, and he separately pleaded to each crime. He then admitted the additional charges of Count 7. Accordingly, all the elements of each underlying crime were established.

### D. Even if relief were granted on Count 7, no relief would be warranted as to Counts 1 and 5.

Any relief granted on Count 7 warrants no additional relief on the other two capital counts, Counts 1 and 5. For at least two reasons, Duncan cannot satisfy his burden to show that any Count 7 error "had substantial and injurious effect or influence" on the other counts. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted); *United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) (per curiam).

First, the Court ensured that the jury rendered each of its three capital sentencing verdicts independently through clear and repeated instruction. Juries are presumed to follow instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and there is every reason to conclude the jury did so here.[5]

This Court required separate findings as to each count. It explained that "[e]ach juror must individually decide *as to each count* whether, under all the facts and circumstances

---

[5] Any attempt to challenge the instructions at this juncture would be an untimely amendment to Duncan's § 2255 motion.

**GOVERNMENT'S REPLY, SECOND SUPP. BRIEFING ON COUNT 7 (CLAIM 9)—8**

in this case, that the death penalty should be imposed rather than a sentence of life imprisonment without the possibility of release. (CR Dkt. 575 at 16-17 (emphasis added).) The Court further emphasized that the jury might determine that death is appropriate on one count, but not on another:

> If all twelve jurors unanimously find that the . . . aggravating factor or factors . . . sufficiently outweigh any mitigating factor or factors . . . that death is therefore the appropriate sentence in this case as to a particular count or counts, then the Court is then required to sentence Mr. Duncan to death for that particular count or counts.

(*Id*. at 17-18.) Finally, the Court reiterated that "[a] separate crime is charged against the defendant in each count. You must decide each count separately. Your verdict on one count should not control you verdict on any other count." (*Id*. at 23.) Given this clarity, Duncan cannot overcome the presumption that the jury followed instructions.

Second, Duncan cannot show that the changing legal landscape regarding § 924(c) undermines the jury's factual findings regarding the individual aggravators or the death sentences imposed for the other two capital counts. Section 924(c) may suffer from vagueness, but that in no way absolves Duncan of arming himself with a firearm and intentionally shooting his victim to death. He cannot meet his burden of establishing that the jury's finding on Count 7 had a "substantial and injurious effect or influence" in determining its findings on the other counts. *See Brecht*, 507 U.S. 637 (internal quotation marks omitted); (CV Dkt. 46 at 2.)

## CONCLUSION

Duncan kidnapped D.G. and murdered him with a firearm. Two independent procedural means established this—his plea and the jury's findings. Duncan therefore remains guilty of not one but two crimes of violence under the elements clause:

**GOVERNMENT'S REPLY, SECOND SUPP. BRIEFING ON COUNT 7 (CLAIM 9)—9**

premeditated murder and capital kidnapping resulting in death.  Accordingly, he can point to no "fundamental defect which inherently results in a complete miscarriage of justice" from his conviction and sentence on Count 7.  Any error—even if present—would be harmless.  This Court should deny Claim 9 of Duncan's § 2255 motion.

Respectfully submitted this 30th day of August, 2019.

BART M. DAVIS
United States Attorney
District of Idaho
By

*/s/ Syrena C. Hargrove*
SYRENA C. HARGROVE
Assistant United States Attorney

*/s/ Katherine L. Horwitz*
KATHERINE L. HORWITZ
Assistant United States Attorney

*/s/ Jeffrey B. Kahan*
JEFFREY B. KAHAN
Trial Attorney

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing and thereby a copy was served on the following parties or counsel:

| | |
|---|---|
| Lindsay Nicole Bennett<br>Office of the Federal Defender<br>801 I Street, 3rd Floor<br>Sacramento, CA 95814<br>lindsay_bennett@fd.org | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ E-mail |
| Kelly L. Culshaw<br>Federal Public Defender<br>801 I Street, 3rd Floor<br>Sacramento, CA 95814<br>Kelly_Culshaw@fd.org | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ E-mail |
| Samuel Richard Rubin<br>Federal Defender Services of Idaho<br>702 W. Idaho Street, Suite 1000<br>Boise, ID 83702<br>dick_rubin@fd.org | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ E-mail |

/s/ *Syrena C. Hargrove*
SYRENA C. HARGROVE
Assistant United States Attorney